MILMAN LABUDA LAW GROUP PLLC
3000 Marcus Avenue Ste 3W8
Lake Success, New York 11042
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
NICHOLAS BERNHARD, RALPH NATALE,                    10 CV 2736 (SJF)
KIRK CONAWAY, and ROY KOHN as Trustees
of THE HEALTH FUND 917 and the LOCAL 868
IBT PENSION FUND; HEALTH FUND 917
and the LOCAL 868 IBT PENSION FUND,

                                                                                   DEFENDANTS'
                      Plaintiffs,            STATEMENT PURSUANT
                                                                             TO LOCAL
      v.                                                  CIVIL RULE 56.1

THE MAJOR AUTOMOTIVE COMPANIES, INC., d/b/a
MAJOR CHEVROLET, INC., and MAJOR DODGE, INC.;
HAROLD BENDEL; MAJOR CHEVROLET INC; and
MAJOR DODGE, INC. and HAROLD BENDEL

                      Defendants.
-------------------------------------------------------------------------X

       Pursuant to Local Civil Rule 56.1 of the United States District Court for the Eastern District of New York, Defendants avers that there does not exist a genuine issue for trial as to the undisputed material facts set forth below:

**THE FUNDS AND THE NATURE OF THE DISPUTE**

    1. This action was brought by Plaintiffs under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 132, 1145 against all Defendants and under sections 404 and 406 of ERISA, 29 U.S.C. §§ 1104 and 1106 against Harold Bendel. <u>See</u> Stipulated Facts in Joint Pre-Trial Order, at para. A.

    2. The Plaintiff Trustees are the Trustees of the Plaintiff Funds. Health Fund 917 (the Health Fund) is an "employee welfare benefit plan" within the meaning of section 3(1) of

ERISA, 29 U.S.C. §1002(1). The Local 917 Pension Fund (the Pension Fund) is an "employee pension benefit plan" within the meaning of section 3(2) of ERISA, 29 U.S.C. §1002(2). Both plans are multiemployer plans within the meaning of section 3(37) of ERISA, 29 U.S.C. § 1002(37). Id., at para. B.

3. The Funds were established pursuant to collective bargaining agreements (CBAs) entered into between Local 917 IBT (the Union) and various employers to provide medical and pension benefits to employees covered under CBAs between the Union and the employers. Id., at para. C.

4. The Funds are maintained and administered in accordance with, and pursuant to Section 302 of the Labor Management Relations Act, 29 U.S.C. §186 and ERISA. The Funds are administered by the Trustees pursuant to the terms of the respective Trust Agreements establishing the Funds. Id., at para. D.

5. The Funds are authorized to maintain suit as independent legal entities under section 501(d)(1) of ERUSA, 29 U.S.C. §1132(d)(1). Id., at para. E.

**MAJOR AND HAROLD BENDEL**

6. Major is a dealership that sells and services new and used vehicles with its principal place of business at 43-40 Northern Blvd., Long Island City, New York. Affidavit of Harold Bendel, dated August 1, 2011 ("Bendel Aff.), at para. 2.

7. Harold Bendel is a Manager at Major who primarily manages and oversees Major's used car departments. Id., at para. 3.

8. Bendel has no ownership interest in Major. Id., at para. 4.

9. During all relevant times, Major was a publically traded company and Bruce Bendell was Major's CEO. Id., at para. 5.

2

## THE APPLICABLE COLLECTIVE BARGAINING AGREEMENTS

10. Major is party to three (3) collective bargaining agreements ("CBA") with Local 917 IBT (the "Union") representing certain categories of employees in the Service Department for Major Chevrolet, the Sales Department of Major Chevrolet and the Service Department of Major Dodge. Id., at para. 6.

11. The CBA between Major Chevrolet (Sales) and the Union covers all full-time commissioned salespersons and excludes "all clerical employees, professional employees, managerial employees, confidential employees, and all other employees guard and supervisors as defined by the Act." Id., at para. 7.

12. The CBA between Major Chevrolet (Service) and the Union covers only service technicians and parts counterpersons. Id., at para. 8.

13. The CBA between Major Dodge (Service) and the Union covers only services technicians and parts counterpersons. Id., at para. 9.

14. Pursuant to the aforementioned CBA's Major was required to make monthly contributions to the Plaintiff Funds on behalf of employees covered by the CBAs. Id., at para. 10.

## THE AUDIT IN QUESTION

15. Beginning in or about December 2008, auditors designated by the Funds, Steinberg, Steckler & Picciurro (the "Steinberg Firm"), performed a payroll audit of Major's records for the period of January 1, 2002 through December 31, 2007. Id., at para. 11.

16. The Steinberg Firm asked that Major produce the following documents for the audit:

3

    a. Employee's individual earnings records detailing wages, weeks worked and/or hours paid;
    b. Payroll tax records submitted to the federal and state government (federal form 941 and state form NYS-45 and/or WR-30);
    c. Corporate Tax Return;
    d. Federal Forms 1096 and 1099; and
    e. Reports filed with any trust funds to which you [Major] pays fringe benefit contributions on any of your [Major's] employees. Id., at para. 12.

17. In or about April 2009, the Steinberg Firm provided to Major its first draft of the audit findings. Id., at para. 13.

18. Between April 2009 and as late as April 2011, the Funds submitted revised audit findings, adjusted downward several times, after Major questioned the findings and submitted documentation to challenge them. Id., at para. 14.

**THE FUND'S LACK OF KNOWLEDGE CONCERNING THE FINDINGS**

19. Major's 30(b)(6) Notice required that the Funds produce a witness who had knowledge of the Funds' claims in the above lawsuit and, specifically, knowledge of how the Funds calculated the level and period of contributions for each individual for which the Funds seek contributions. See Exhibit "C" annexed to the Affirmation of Adam C. Weiss, Esq., dated August 1, 2011.

20. The Funds used nothing other than the audit findings to assess the alleged delinquent contributions by Major. See Deposition of Joann Emmons taken on July 8, 2011 and annexed to the Affirmation of Adam C. Weiss, Esq., dated August 1, 2011, as Exhibit "D" ("Emmons Dep."), at p. 28.

21. The Funds were provided no explanation from the auditors as to how they determined their findings. Id., at p. 53.

22. The Funds conducted no investigation or internal analysis of the auditor's findings after being presented them by the auditors. Id., at pp. 54-55, 115.

23. The Funds were provided no back-up documentation from the auditors that the auditors purportedly used to determine their findings. Id., at p. 103.

24. The Funds have no personal knowledge of any alleged amounts due and owing for any individuals listed in the audit findings for which contributions are claimed. Id., at pp. 129-31.

**MAJOR'S REVIEW OF THE AUDIT FINDINGS**

25. Major reviewed the Steinberg Firm's audit findings. While Major does not agree with them, it has at least taken note of the specific hours of work that the auditors say should have been paid as employer contributions to the Plaintiff Funds. See Bendel Aff., at para. 15.

26. Major did not deduct the amount of contributions Plaintiffs claim in the Steinberg audit to be due to them from the wages or compensation of the workers for whom the audit claims employer contributions should have been made. Instead, even to the extent contributions were made to the Funds, payments came from Major itself. Id., at para. 16.

27. Major's Payroll Clerk handles the remittance of contributions to the Funds. Id., at para. 17.

28. Bendel has no authority to direct that any part of the audit findings, or any contributions whatsoever, be paid. Id., at para. 18.

29. The Funds in this case never delegated to Bendel any fiduciary responsibilities that were reviewed or evaluated by the Trustees of the Funds. Id., at para. 19.

30. Bendel did not know that he was to be considered a fiduciary of the Plaintiffs or their assets. He has never received any notice that he would or even could be

considered a fiduciary of the Plaintiffs or any of their plan assets or could be considered subject to fiduciary liability. Id., at para. 20.

31. No one suggested Bendel was a fiduciary or acted as a fiduciary until this lawsuit.

Id., at para. 21.

Dated: Lake Success, New York
July 29, 2011

                          MILMAN LABUDA LAW GROUP PLLC

                          By:   /s/_____
                                Adam C. Weiss (AW-5752)
                                Attorneys for Defendants
                                3000 Marcus Avenue, Suite 3W8
                                Lake Success, NY 11042
                                (516) 328-8899