UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

**NICHOLAS BERNHARD, RALPH NATALE,**      10 CV 2736(SJF)
**KIRK CONAWAY, and ROY KOHN as TRUSTEES**
**OF HEALTH FUND 917 AND THE LOCAL 868**
**PENSION FUND; HEALTH FUND 917; and**       **PLAINTIFFS' RESPONSE TO**
**LOCAL 868 PENSION FUND,**                     **DEFENDANTS' STATEMENT**
                                             **PURSUANT TO LOCAL CIVIL**
                        Plaintiffs,     **RULE 56.1**

      -against-

**THE MAJOR AUTOMOTIVE COMPANIES, INC.,**
**d/b/a MAJOR CHEVROLET, INC., and MAJOR**
**DODGE, INC.; HAROLD BENDELL; MAJOR**
**CHEVROLET INC; and MAJOR DODGE, INC.**
**and HAROLD BENDEL**

                     Defendant.
-------------------------------------------------------X

      Pursuant to Local Civil Rule 56.1 of the United States District Court for the
Eastern District of New York, Plaintiffs response to Defendants' statement of allegedly
undisputed material facts as follows:

I.      **Responses to Defendants' Rule 56.1 Statement:**

     1.    Do not dispute that this action was brought by Plaintiffs under Sections
          502 and 515 of ERISA, 29 U.S.C. §§ 132, 1145 against all Defendants
          and under sections 404 and 406 of ERISA, 29 U.S.C. §§ 1104 and 1106,
          against Harold Bendel. See Stipulated Facts in Joint Pre-Trial Order, at
          para. A.

     2.    Do not dispute that the Plaintiff Trustees are the Trustees of the Plaintiff
          Health Fund. Health Fund 917 (the Health Fund) which is an "employee
          welfare benefit plan" within the meaning of section 3(1) of ERISA, 29
          U.S.C. § 1002(1). The Trustees are Trustees of the IBT Local 868
          Pension Fund, not the Local 917 Pension Fund. The IBT Local 868
          Pension Fund (the Pension Fund) is an "employee pension benefit plan"
          within the meaning of section3(2) of ERISA, 29 U.S.C. § 1002(2). Both
          plans are multiemployer plans within the meaning of section 3(37) of
          ERISA, 29 U.S.C. § 1002(37). Id., at para. B.

3.   Do not dispute that the Funds were established pursuant to collective bargaining agreements (CBAs) entered into between Local 917 IBT (the Union) and various employers to provide medical and pension benefits to employees covered under CBAs between the Union and the employers. Id., at para. C.

4.   Do not dispute that the Funds are maintained and administered in accordance with, and pursuant to Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186 and ERISA. The Funds are administered by the Trustees pursuant to the terms of the respective Trust Agreements establishing the Funds. Id., at para. D.

5.   Do not dispute that the Funds are authorized to maintain suit as independent legal entities under section 501 (d)(1) of ERISA, 29 U.S.C. § 1132(d)(1). Id., at para. E.

6.   Do not dispute that Major is a dealership that sells and services new and used vehicles with its principal place of business at 43-40 Northern Blvd., Long Island City, New York. Affidavit of Harold Bendel, dated August 1, 2011 ("Bendel Aff."), at para. 2.

7.   Assert that disputed material issues of fact exist as to whether Harold Bendel is merely a manager at Major who primarily manages and oversees Major's used car departments. Plaintiffs Exhibits "B", "C" and "D".

8.   Assert that disputed material issues of fact exists as to whether Bendel has an ownership interest in Major. Plaintiffs Exhibits "B", "C" and "D".

9.   Dispute that Bruce Bendell was Major's CEO at all relevant times. See, Plaintiffs' Exhibit "J", indicating that Harold Bendel was Chairman or Chief Executive Officer of Major Dodge, Inc., prior to November 25, 2003.

10.   Do not dispute that Major is party to three (3) collective bargaining agreements ("CBA") with Local 917 IBT (the "Union") representing certain categories of employees in the Service Department for Major Chevrolet, the Sales Department of Major Chevrolet and the Service Department of Major Dodge. Id., at para. 6.

11.   Do not dispute that the CBA between Major Chevrolet (Sales) and the Union covers all full-time commissioned salespersons and excludes "all clerical employees, professional employees, managerial employees, confidential employees, and all other employees guard and supervisors as defined by the Act." Id., at para. 7.

2

12.   Dispute Defendants' assertion that the CBA between Major Chevrolet (Service) and the Union covers only service technicians and parts counter persons.  The CBA covers mechanics, parts counter persons, porters and employees who prepare cars for sales.  Emmons Cert. at para. 17.

13.   Dispute that the CBA between major Dodge (Service) and the Union covers only services technicians and parts counter persons and states that the CBA covers mechanics, parts counter persons, porters and employees who prepare cars for sales.  Emmons Cert. at para. 17.

14.   Do not dispute that pursuant to the aforementioned CBA's Major was required to make monthly contributions to the Plaintiff Funds on behalf of employees covered by the CBAs.  Id., at para. 10.

15.   Do not dispute that beginning in or about December 2008, auditors designated by the Funds, Steinberg, Steckler & Picciurro (the "Steinberg Firm"), performed a payroll audit inspection of Major's records for the period of January 1, 2002 through December 31, 2007.  Id., at para. 11.

16.   Do not dispute that the Steinberg Firm asked that Major produce the following documents for the audit:

   a.   Employee's individual earnings records detailing wages, weeks worked and/or hours paid;
   b.   Payroll tax records submitted to the federal and state government (federal form 941 and state form NYS-45 and/or WR-30);
   c.   Corporate Tax Returns;
   d.   Federal Forms 1096 and 1099; and
   e.   Reports filed with any trust funds to which you [Major] pays fringe benefit contributions on any of your [Major's] employees.  Id., at para. 12.

17.   Do not dispute that on or about April 2009, the Steinberg Firm provided to Major its first draft of the audit findings.  Id., at para. 13.

18.   Dispute Defendants' allegation that between April 2009 and April 2011, the Funds revised the audit findings downward after Major submitted additional documentation not previously provided as some revisions were based on Affidavits accepted by the Funds, not proofs provided by Major. Moskowitz Certification at para. 12.

3

19.   Do not dispute that Major's 30(b)(6) Notice required that the Funds produce a witness who had knowledge of the Funds' claims in the above lawsuit and, specifically, knowledge of how the Fund calculated the level and period of contributions for each individual for which the Funds seek contributions. See Exhibit "C" annexed to the Affirmation of Adam C. Weiss, Esq., dated August 1, 2011.

20.   Dispute Defendants' allegations in paragraph 20, and state that the Funds relied on the audit findings determined by its independent auditors to assess the alleged delinquent contributions by Major. See, Emmons Cert. at para. 10.

21.   Dispute Defendants' allegation that the Funds were provided no explanation from the auditors as to how they determined their findings and that this is an undisputed material fact and assert that the Fund Manager and Trustees understand the procedure by which an audit is performed and findings calculated, but do not independently verify the calculations of the Finds made by the Funds' auditors. Emmons Cert. at para. 16.

22.   Do not dispute that the Funds conducted no separate investigation or internal analysis of the auditor's findings after being presented them by the auditors but assert that issues of material fact as to the sufficiency of the Funds' actions exist. Id., at pp. 54-55, 115.

23.   Dispute the allegations in paragraph 23 and state that the Funds do not independently review the documents used to determine their findings. Emmons Cert. at para. 16.

24.   Assert that disputed issues of fact exist as to whether the funds have no personal knowledge of any alleged amounts due and owing for any individuals listed in the audit findings for which contributions are claimed and contend that these facts are not material. Id., at pp. 129-31.

25.   Assert that these facts are irrelevant and immaterial and neither confirm nor deny Defendants' allegations as Plaintiffs have no way to know exactly what Major has done in this case.

26.   Assert that these facts are irrelevant and immaterial but state that they cannot respond to Defendants' statement "Major did not deduct the amount of contributions Plaintiffs claim in the Steinberg audit to be due to them from the wages or compensation of the workers for whom the audit claims employer contributions should have been made. Instead, even to the extent contributions were made to the Funds, payments came from Major itself; and thus can neither confirm or deny it" as it is incomprehensible.

4

27.   Assert that this fact would be irrelevant and immaterial.

28.   Assert that disputed material issues of fact exist as to whether Bendel has authority to direct that any part of the audit findings, or any contributions whatsoever, be paid.  See Plaintiffs' Exhibits "B", "C", "D" and "E".

29.   Assert that these facts are immaterial because, while the Funds in this case never expressly delegated to Bendel any fiduciary responsibilities that were review or evaluated by the Trustees of the Funds, Bendel's control over plan assets would give him fiduciary duties to the Fund.  See 29 U.S.C. 1106, Trust Amendments, Plaintiffs' Exhibit "A".   Thus, disputed material issues of fact exist as to Bendel's fiduciary status.

30.   Assert that whether Bendel knew that he was a fiduciary of the Plaintiffs or their assets is irrelevant and immaterial, and further assert that disputed material issue of fact exist as to whether Bendel was a fiduciary.  See Plaintiffs' Exhibits "B", "C", "D" and "E".

31.   Assert that whether anyone suggested to Bendel that he was a fiduciary or acted as a fiduciary until this lawsuit is irrelevant and immaterial and further assert that disputed material issues of fact exist to whether Bendel was a fiduciary.

II.   **Plaintiffs' Statements of Undisputed Material Facts**

32.   Defendants, or their representative, were responsible for creating or inputting the ADP Payroll codes that Defendants claims were inaccurate. Moskowitz Cert. at para. 7.

33.   Joann Emmons explained during her deposition how the Funds calculated the "level of contributions for each person for whom the Fund seeks contributions".  Plaintiffs' Exhibit "I".

34.   Fund auditors Adolfo Rodas and David Moskowitz explained to Defendants the audit procedure and how the Findings were calculated during their depositions,  Moskowtiz Cert. at para. 17.

Dated:     Floral Park, New York
           August 18, 2011


                              **LAW OFFICES OF CAMPBELL &
                              ASSOCIATES, P.C.**


                              By: _Susan M Bruno_
                                   Susan M. Bruno
                                   Attorneys for Plaintiffs
                                   99 Tulip Avenue, Suite 404
                                   Floral Park, New York 11001
                                   516-352-0300


G:\New Documents\Local.917.Funds\Collections\Major.chev.dodge.audits.2010\Majors SJ motion\plaintiffs response to rule 56.1.wpd