UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
NICHOLAS BERNHARD, RALPH NATALE,         10 CV 2736 (SJF)
KIRK CONAWAY, and ROY KOHN as Trustees
of THE HEALTH FUND 917 and the LOCAL 868
IBT PENSION FUND; HEALTH FUND 917
and the LOCAL 868 IBT PENSION FUND,

               Plaintiffs,
     v.

THE MAJOR AUTOMOTIVE COMPANIES, INC., d/b/a
MAJOR CHEVROLET, INC., and MAJOR DODGE, INC.;
HAROLD BENDEL; MAJOR CHEVROLET INC; and
MAJOR DODGE, INC. and HAROLD BENDEL

              Defendants.
------------------------------------------------------------------------------X


DEFENDANTS' REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


MILMAN LABUDA LAW GROUP PLLC

Joseph M. Labuda, Esq.
Adam C. Weiss, Esq.
Attorneys for Defendants
3000 Marcus Ave.. Suite 3W8
Lake Success. NY 11042
(516) 328-8899

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..…………………….ii

PRELIMINARY STATEMENT…………………………………………….………………..1

ARGUMENT………………………………………………………………….………………3

POINT I

THE FUNDS IMPROPERLY DISPUTED CERTAIN FACTS IN RESPONSE TO
DEFENDANTS' STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1
AND THOSE FACTS MUST BE DEEMED ADMITTED………………………………...3

    1.  The Funds' argumentative, speculative and conclusory denials must be rejected………..3
    2.  The Funds' denials that are not supported by admissible evidence are defective………..4
    3.  All statements for which no evidence is cited to support denial must be admitted………5
    4.  All improper denials must be deemed admitted……………………………………………6

POINT II

THE FUNDS' BREACH OF FIDUCIARY DUTY CLAIMS AGAINST BENDEL
MUST BE DISMISSED………………………………………………………….………...…7

    1.  Harold Bendel exercised no discretion or control over payments to the Funds…..…….7
    2.  The alleged delinquent contributions are not plan assets…………………….………..10

POINT III

THE FUND CANNOT ESTABLISH AS A MATTER OF LAW THAT THE ALLEGED
CONTRIBUTIONS OWED MAY BE ENTITLED TO A REASONABLE INFERENCE…..13

CONCLUSION…………………………………………………………………………….…..19

i

## TABLE OF AUTHORITIES

Barefield v Bd. of Trs., 500 F Supp 2d 1244 (E.D.Cal. 2007)...................................4

Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919 (2d Cir. 1988).....4

Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000)..................13

Connors v. Paybra Mining Co., 807 F. Supp. 1242 (S.D. W. Va. 1992)...........................8,12

Countryside Oil Co. v Travelers Ins. Co., 928 F Supp 474 (D.C.N.J. 1995)........................4

Demolition Workers Union, Local 95 v. Mackroyce Contr. Corp., v. 2000 U.S. Dist.
LEXIS 3548 (S.D.N.Y. Mar. 17, 2000).......................................................16-17

DeVito v. Hempstead China Shop, Inc., 38 F.3d 651 (2d Cir. 1994)...............................17

Giannullo v. City of N.Y., 322 F.3d 139 (2d Cir. 2003)...........................................5

In re M & S Grading, Inc., 541 F.3d 859 (8th Cir. 2008).........................................13

Jackson v. United States, 129 S. Ct. 1307, 173 L. Ed. 2d 575 (2009)............................13

Laborers' Combined Funds of W. Pa. v. Cioppa, 346 F. Supp. 2d 765 (W.D. Pa. 2004)........9,12

Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc., 1993 U.S. Dist.
LEXIS 4741 (E.D.N.Y. Mar. 30, 1993)..........................................................14

Ofudu v. Barr Labs., Inc., 98 F. Supp. 2d 510 (S.D.N.Y. 2000)....................................3

Rahm v. Halpin (In re Halpin), 566 F.3d 286 (2d Cir. N.Y. 2009)..............................10,12

Solomon v. Laranne Sportswear Corp., 648 F. Supp. 407 (E.D.N.Y. 1986)........................8

Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp., 2010
U.S. Dist. LEXIS 9073 (E.D.N.Y. Feb. 2, 2010)..................................................8

United States v. Jackson, 524 F.3d 532 (4th Cir. 2008)..........................................13

Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50 (2d Cir. 1984)....................8

## PRELIMINARY STATEMENT

Faced with both the law and the facts against them, the Funds turn to hyperbole and sarcasm in an effort to desperately avoid summary judgment. Nonetheless, the Funds cannot escape the following facts, which are fatal to their case: (1) Harold Bendel cannot be deemed a fiduciary because (a) there is no evidence that he had any authority or exercised any control over the payment or non-payment of monies to the Funds, and (b) the monies claimed cannot be considered "plan assets" because they never became "due and owing;" and (2) Major cannot be liable for any alleged delinquent contributions because (a) the Funds' auditors requested insufficient information to do a proper audit, and (b) the Funds already conceded that over 1.4 million dollars of its original claim was in error. When the Funds realized that their findings were so grossly overstated and inaccurate, it should have raised serious red flags for them and they should have re-started the audit from the very beginning. However, the Funds stubbornly refused to do so and now must suffer the consequences of their own blunders.

In their opposition papers, in addition to the aforementioned hyperbole and sarcasm, the Funds take some serious leaps of fantasy in order to draw conclusions that simply do not fit the real facts. First, in order to support their claim that Harold Bendel is a fiduciary, they attach two newspaper clippings from 2008 and 2009, respectively, when the audit period in question only covered the years 2002 to 2007. Second, the articles are inadmissible hearsay. Third, they identify in the words of third parties (the clippings' authors) that Mr. Bendel was President or Senior Executive of "Major World," which is not even a party to this action. Fourth, to support their theory that the monies claimed owed herein should be "plan assets" the Funds state that they are such because they are "due and owing," however, the only evidence that the Funds suggests to show they are "due and owing" is via the Funds' flawed audit. Significantly, as

alluded to earlier, that audit was so seriously flawed that the Funds already conceded that out of the original $1.9 million claimed, that less than $500.000 remains "due and owing." The Funds goes so far to blame Major for the audit's flaws by asserting that Major failed to provide the Funds with all the information requested. However, the Funds does not identify what items were not turned over. Even more importantly, to the extent that specific requests are identified, the Funds do not explain how these "missing" items would have cured the defects in the audit. Indeed, some of those items, payroll tax records submitted to the federal and state government and corporate tax returns have nothing to do with identifying employees for whom contributions may be owed. Many of these forms do not even list employees names and the balance provide no further information to identify whether the subject employee is a bargaining unit member for which contributions may be owed.

In sum, this audit was so fatally flawed as it would be impossible to ascertain with any reasonableness as to any contributions owed without sufficient information, which was clearly lacking. Accordingly, Defendants' motion for summary judgment should be granted in its entirety.

**ARGUMENT**

**POINT I**

**THE FUNDS IMPROPERLY DISPUTED CERTAIN FACTS IN RESPONSE TO DEFENDANTS' STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1 AND THOSE FACTS MUST BE DEEMED ADMITTED**

Pursuant to Rule 56.1(b) of the Local Rules of the Eastern District of New York, a Counter-Statement of Material Facts must address each of the material facts in the moving parties' Rule 56.1 Statement and either admit or deny them. Pursuant to Local Rule 56.1(d), such response must be followed by citation to admissible evidence as required by Fed. R. Civ. P. 56(e). The Funds' responses are defective in a number of ways.

1. **The Funds' argumentative, speculative and conclusory denials must be rejected**

Case law states that any paragraphs purporting to dispute facts that are not made upon personal knowledge…set[ting] forth such facts as would be admissible in evidence, and [do not] show affirmatively that the affiant is competent to testify to the matters stated therein, must be stricken. Fed. R. Civ. P. 56(e). See also Local Rule 56.1(c), (d); Ofudu v. Barr Labs., Inc., 98 F. Supp. 2d 510, 512-13 (S.D.N.Y. 2000) (holding that the plaintiff cannot oppose a summary judgment motion by asserting conclusory remarks inconsistent with the record).

For example, the Funds' reliance on the Certification of Joann Emmons is clearly defective because she already admitted that she has no personal knowledge regarding the audit in question. Responses to numerous purported factual statements are clearly not within her personal knowledge, or are otherwise conclusory and/or speculative, including:

- "[M]aterial issues of fact exist as to whether Harold Bendel is merely a manager at Major who primarily manages and oversees major's used car departments" See Pl's Responses, at para. 7.

3

- "Dispute that Bruce Bendel was major's CEO at all relevant times." See Pl's Responses, at para. 9.

- The CBA covers mechanics, parts counter persons, porters and employees who prepare cars for sales. See Pl's Responses, at paras. 12-13.

- "[I]ssues of material fact as to the sufficiency of the Funds' actions exist." See Pl's Responses, at para. 22.

- "[D]isputed issues of fact exist as to whether the funds have no personal knowledge of any alleged amounts due and owing." See Pl's Responses, at para. 24.

- Assert that this fact would be irrelevant and immaterial. See Pl's Responses, at para 27.

Accordingly, all such statements must be stricken.

**2. The Funds' denials that are not supported by admissible evidence are defective**

The law is also that clear inadmissible evidence cannot be used to defeat a party's motion for summary judgment. See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1988) (striking paragraphs that are unsupported speculation in Plaintiffs' testimony or are inadmissible); Ofudu, 98 F. Supp. 2d at 512-13 (striking hearsay and mischaracterizations of evidence).

Further, the law mandates that on a motion for summary judgment, the Court cannot consider evidence attached as exhibits to a party's submission where there is no proper foundation. See e.g., Countryside Oil Co. v Travelers Ins. Co., 928 F Supp 474 (D.C.N.J. 1995) (rejecting an exhibit, where there was no affidavit laying foundation for its admissibility, because there was no way for court to determine genuineness of document, including whether agent actually prepared and agrees with it, and ruling it was inadmissible under FRCP 56(e) and FRE 801 and 901); Barefield v Bd. of Trs., 500 F Supp 2d 1244 (E.D.Cal. 2007) (excluding from

4

consideration, in an individual's racial discrimination suit, documents not authenticated by an affidavit of personal knowledge, as required by Fed. R. Evid. 901(a)).

Specifically, Plaintiff's Exhibits A and E are unauthenticated and inadmissible hearsay and this Court should ignore them.  First, as to the internet newspaper stories where Harold Bendel is identified as President of "Major World" (Plaintiff's Exhibit E), the clippings are clearly hearsay as they are out-of-court statements by third-parties (i.e., the authors of the clippings) that the Funds assert for the truth of the matters asserted.  See Fed. R. Evid. 901(a). Second, as to the Fourth Amendment to the Declaration of Trust of the Local 868 Pension Fund and Fifth Amendment to the Declaration of Trust of the Local 917 Health Fund (Plaintiff's Exhibit A), no affidavit by any person with personal knowledge lays a foundation for the admissibility of the documents (e.g., the any of the parties who actually signed the documents or could otherwise authenticate them).

Due to such a blatant and improper foundation, the documents should not be considered by this Court.

### 3.  <u>All statements for which no evidence is cited to support denial must be admitted</u>

There are also several paragraphs (summarized below in section 4) of Plaintiff's Responses where the Funds either disputes Major's factual assertion but fails to cite to <u>any</u> evidence to support their denial or fails to address whether the fact asserted is true or false and merely states that it is "immaterial."  All such improper denials or failure to deny should be deemed as admissions. See <u>e.g.</u>, <u>Giannullo v. City of N.Y.</u>, 322 F.3d 139, 140 (2d Cir. 2003) (If the opposing party fails to controvert a fact set forth in the Rule 56.1 statement, it will be deemed admitted.)

### 4. **All improper denials must be deemed admitted.**

The below chart summarizes the content of all improperly "disputed" statements in Pl's

Rule 56.1 Counter-statement and the basis for rejecting Pl's Counter-statement.

| Para # | Summary of statement purportedly denied by Plaintiffs | Basis for rejecting Plaintiffs' Response |
|---|---|---|
| 7 | Harold Bendel is a manager at Major who primarily manages and oversees Major's used car departments | Citation to inadmissible evidence; denial not supported by citation |
| 8 | Harold Bendel has no ownership interest in Major | Citation to inadmissible evidence; denial not supported by citation |
| 9 | Bruce Bendell was Major's CEO at all relevant times | Citation to inadmissible evidence; denial not supported by citation |
| 12 | The Chevrolet (Service) CBA covers only service technicians and parts counter persons | Citation to inadmissible evidence |
| 13 | The Dodge (Service) CBA covers only service technicians and parts counter persons | Citation to inadmissible evidence |
| 20 | The Funds used nothing other than the audit findings to assess the alleged delinquent contributions by Major | Citation to inadmissible evidence; citation conflicts with prior sworn testimony |
| 21 | The Funds were provided no explanation from the auditors as to how they determined their findings. | Citation to inadmissible evidence; citation conflicts with prior sworn testimony |
| 23 | The Funds were provided no back-up documentation from the auditors that the auditors purportedly used to determine their findings. | Citation to inadmissible evidence; citation conflicts with prior sworn testimony |
| 24 | The Funds have no personal knowledge of any alleged amounts due and owing for any individuals listed in the audit findings for which contributions are claimed. | Citation conflicts with prior sworn testimony |
| 25 | Major reviewed the Steinberg Firm's audit findings. While Major does not agree with them, it has at least taken note of the specific hours of work that the auditors say should have been paid as employer contributions to the Plaintiff Funds. | No citation to any evidence |
| 26 | Major did not deduct the amount of contributions Plaintiffs claim in the Steinberg audit to be due to them from the wages or compensation of the workers for whom the audit claims employer contributions should have been made. Instead, even to the extent contributions were made to the Funds, payments came from Major itself. | No citation to any evidence |

| 27 | Major's Payroll Clerk handles the remittance of contributions to the Funds. | No citation to any evidence |
|----|------------------------------------------------------------------------------|------------------------------|
| 28 | Bendel has no authority to direct that any part of the audit findings, or any contributions whatsoever, be paid. | Citation to inadmissible evidence; denial not supported by citation |
| 29 | The Funds in this case never delegated to Bendel any fiduciary responsibilities that were reviewed or evaluated by the Trustees of the Funds. | Citation to inadmissible evidence |
| 30 | Bendel did not know that he was to be considered a fiduciary of the Plaintiffs or their assets.  He has never received any notice that he would or even could be considered a fiduciary of the Plaintiffs or any of their plan assets or could be considered subject to fiduciary liability. | Citation to inadmissible evidence; denial not supported by citation |
| 31 | No one suggested Bendel was a fiduciary or acted as a fiduciary until this lawsuit. | No citation to any evidence |

Based on these procedural and substantive flaws, the above paragraphs in the Funds'

Responses should be stricken and Major's summary judgment motion should be granted.

## POINT II

### THE FUNDS' BREACH OF FIDUCIARY DUTY CLAIMS AGAINST BENDEL MUST BE DISMISSED

In Point I of their Opposition Brief, the Funds attempt to hold Harold Bendel liable for

the alleged delinquent premiums as a plan fiduciary by asserting that (1) he exercised discretion

and/or control over the payment (or non-payment) of monies to the Funds and (2) the amounts

allegedly owed are "plan assets" under the terms of the Funds' Declarations of Trust.  Although

both factors must be established to impute a fiduciary duty on an individual in the context of

fund contributions, there is no evidence in the record to support either proposition.

#### 1.  Harold Bendel exercised no discretion or control over payments to the Funds

The Funds' assertion of individual liability against Harold Bendel flies directly in the

face of years of court precedent that finds that ERISA cannot impose individual liability on

individuals, whether they are a company's  former president, shareholders or otherwise, except

under the most egregious circumstances – none of which are present here.  See e.g., Walter E. Heller & Co.  v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir. 1984) (holding that courts presume that an owner is not personally liable unless the funds can meet a high burden akin to piercing the corporate veil); Solomon v. Laranne Sportswear Corp., 648 F. Supp. 407 (E.D.N.Y. 1986) (imposing no personal liability in the absence of deceitful conduct).  Indeed, in light of these holdings, it is fair to say that courts have been loathe to impose individual liability except in the most outrageous violations of the corporate form.

The Funds reliance on cases imposing individual liability in other contexts is severely misplaced.  For example, the Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp., 2010 U.S. Dist. LEXIS 9073 (E.D.N.Y. Feb. 2, 2010) case, the Judge Block decision heavily relied upon by the Funds, was decided in the context of a motion for default judgment.  Indeed, in Manhattan Plumbing, no evidence was submitted by the defendants whatsoever challenging the funds' position that the individual in question was a fiduciary.  Id., at *1-2.  Interestingly enough, despite that lack of evidence to the contrary, Magistrate Levy's initial Report and Recommendation actually held that no individual liability should be imposed!  Id., at *2.  Thus, Judge Block's adoption of the Report with the exception of the individual liability component (the Court ultimately found that the facts as plead supported the imposition of individual liability) has no applicability in the instant case, where the Funds' has established no basis upon which to impose individual liability upon Harold Bendel and Major has directly challenged such an assertion by introducing evidence that Harold Bendel had no responsibility for the payment of contributions to the Funds.

Connors v. Paybra Mining Co., 807 F. Supp. 1242 (S.D. W. Va. 1992), another case relied upon by the Funds, is also distinguishable on the issue of whether Harold Bendel may be

deemed a fiduciary. First, the individual defendants in <u>Connors</u> admitted at their depositions that they were directly involved in the decision as to whether contributions would be paid the funds. Second, the individual defendants did not even challenge the funds' claim that certain amounts were due and owing to the funds. Finally, the <u>Connors</u> Court even stated that its holding was a "narrow one" based on the specific facts of the case. <u>See</u> <u>Id.</u>, at 1247.

Here, the significant and specific facts of <u>Connors</u> are simply not present. First, Harold Bendel denied any responsibility for the payment (or non-payment) of monies to the Fund. Indeed, it appears that Bruce Bendel (and not Harold) was the individual who signed checks that were delivered to the Funds. <u>See</u> Weiss September 2, 2011 Aff., at Exhibit A. Second, Major has not conceded that even one penny is owed to the Funds while the Funds have reduced their original demand from almost two million dollars to less than $500,000. Therefore, <u>Connors</u> is clearly not controlling here.

Similarly, in <u>Laborers' Combined Funds of W. Pa. v. Cioppa</u>, 346 F. Supp. 2d 765 (W.D. Pa. 2004), another case cited by the Funds, the facts are readily distinguishable. The <u>Cioppa</u> Court only found the individual shareholder personally liable when it was conceded that the individual was (1) responsible for collecting monies paid to his company, (2) submitting the monthly contribution reports and payments for the company's benefit plans and (3) determining which of his company's creditors would be paid. Also, the company did not dispute that the amounts claimed by the funds were actually owed.

Again, the facts herein cannot be farther from the facts of <u>Cioppa</u>. Harold Bendel was not responsible for collecting monies paid to Major, submitting the monthly contribution reports and payments for Major's benefit plans or determining which of Major's creditors would be paid. Also, Major indeed disputes that the amounts claimed by the Funds are owed.

In order to manufacture a claimed issue of fact in their desperate attempt to avoid summary judgment, the Funds attempts to introduce two newspaper clippings where the reporters identified Harold Bendel as the President of "Major World." The Funds' reliance on these clippings is flawed in many many ways. First, the articles are inadmissible hearsay as set forth in Point I of this Brief. Second, "Major World" is not even a party in this case. Third, the clippings only state that Harold Bendel was President of Major World at the time that the articles were written (2008 and 2009), which are outside the relevant audit period herein (January 1, 2002 to December 31, 2007). Therefore, it is completely irrelevant. Fourth, even assuming *arguendo*, that Harold Bendel were the President of the corporate Defendants herein during the relevant period, which he was not, it does not necessarily follow that he would be individually liable for contributions claimed by the Funds.[1]

Accordingly, there is a total lack of evidence of control or discretion on Harold Bendel's part, which is necessarily fatal to the Funds' claim. Therefore, summary judgment in Harold Bendel's behalf must be granted.

## 2. The alleged delinquent contributions are not plan assets

Even assuming *arguendo* that Harold Bendel did have control or exercise discretion over the payment of monies to the Funds, summary judgment is still appropriate here because the Funds has failed to establish any issues of fact concerning whether the monies claimed by the Funds are "plan assets." Indeed, under the undisputed facts, they are not plan assets.

It is well-established that corporate assets do not become plan assets merely because an employer has a corporate obligation to make payments to the plan. Rahm v. Halpin (In re Halpin), 566 F.3d 286 (2d Cir. N.Y. 2009). In Halpin, the court held that under well-settled

---

[1] The Funds' assertion that it is "clear" that Harold Bendel had authority in this matter because he discussed "stuff" with Robert Cottrell and Major's attorneys is almost laughable.

principles of trust law, a debtor-creditor relationship is not a fiduciary relationship. See Id., at 290 (*citing* Restatement (Third) of Trusts § 5(k) & cmt. K). Indeed, the Restatement of Trusts explains that, with regard to amounts deducted by an employer for eventual contribution on behalf of an employee, "[a] trust arises as to the amounts deducted as soon as they are either set aside by the employer for the employees' purposes or paid over to another person for those purposes. Until then, the employer's obligation is merely a debt, with the 'obligee'…holding a chose in action…in trust." Id., at § 5 cmt. k.

Here, Harold Bendel (or Major) did not deduct the amount of contributions the Funds claim in the Steinberg audit to be due to them from the wages or compensation of the workers for whom the audit claims employer contributions should have been made. Instead, even to the extent contributions were made to the Funds, payments came from Major itself. See Defendants' Statement Pursuant to Rule 56.1, at para. 26. In response to this statement of fact, the Funds merely asserted that it was "irrelevant and immaterial." As such, it is not only deemed admitted, but also proves fatal to the Funds' case under the Halpin holding. Indeed, if no amounts were ever deducted or set aside for the employees' or Funds' purposes, then no trust (or fiduciary) relationship were created.

As such, Major's summary judgment motion must be granted as to Harold Bendel fiduciary status.

Perhaps knowing that their assertions have no merit, the Funds attempts to convert the alleged delinquencies into plan assets by citing to the Fund's own Trust Declarations, which state that actual unpaid contributions become plan assets when they are "accrued, owing, due or paid" to the Funds. See Plaintiffs' Exhibit A. This argument fails for numerous reasons. First, the Trust Declarations cited by the Funds are inadmissible hearsay and not properly authenticated as

set forth in Point I above. As such, they cannot be even be considered by this Court on Defendants' motion for summary judgment.

Second, and maybe even more importantly, the amounts at issue herein were not accrued, are not owing, are not due and were certainly not paid, so as to trigger the application of the language above. In short, just because the Funds claims that said amounts are due does that mean that they automatically become plan assets. As the Halpin court rightly cautioned, if claimed unpaid employer contributions were automatically deemed plan assets, the employer would automatically become an ERISA fiduciary once it failed to make the payments even in the event that the claims, like herein, had no merit. Halpin, 566 F.3d, at 292. As such, the employer would owe the plan undivided loyalty to the Funds at the expense of competing obligations -- some fiduciary -- to the business, and to others such as employees, customers, shareholders and lenders, and an undifferentiated portion of the companies' assets would be held in trust for the plan. Id. The Court continued, "[i]t is difficult to envision how proprietors could ever operate a business enterprise under such circumstances. It is highly unlikely -- indeed inconceivable -- that Congress intended such a result. See Id.

Applying these principles here, it would be nonsensical to hold that the claimed unpaid employer contributions were assets of the plans, particularly where the Funds has already conceded that over $1.4 M of those claimed contributions were in error.

The Funds fare no better in their reliance on several cases cited in their Opposition Brief. Specifically, the two of the three cases relied upon by the Funds on this point, Connors v. Paybra Mining Co., 807 F. Supp. 1242 (S.D. W. Va. 1992) and Laborers' Combined Funds of W. Pa. v. Cioppa, 346 F. Supp. 2d 765 (W.D. Pa. 2004), are both cases where the individuals in question did not challenge or dispute that the amounts claimed by the funds were actually owed.

Therefore, the <u>Connors</u> and <u>Cioppa</u> courts never even reached the question of whether the contributions were "due and owing"; same was conceded by the defendants.

In <u>United States v. Jackson</u>, 524 F.3d 532 (4th Cir. 2008), the third and final case cited by the Funds on this point, the holding relied upon by the Funds was vacated by the U.S. Supreme Court. <u>See Jackson v. United States</u>, 129 S. Ct. 1307, 173 L. Ed. 2d 575 (2009). In its decision, the Supreme Court vacated the Fourth Circuit's holding that the unpaid contributions were plan assets when they became "due and payable" and remanded the case for re-consideration in light of the position the Solicitor General articulated in its brief, the identical position that is congruent with <u>Halpin</u>. <u>See also</u> <u>In re M & S Grading, Inc.</u>, 541 F.3d 859, 865 (8th Cir. 2008) (concluding that when the employer "failed to make the payments to the plans, the unpaid contributions remained corporate assets and did not become assets of the plan"); <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1234 (9th Cir. 2000) ("Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation").

Accordingly, there are no material disputed facts in need of resolution on these issues, Bendel exercised no control or discretion over payments to the Funds and the alleged unpaid contributions cannot be deemed to be plan assets. As such, Harold Bendel is entitled to judgment as a matter of law.

**POINT III**

**THE FUND CANNOT ESTABLISH AS A MATTER OF LAW THAT THE ALLEGED CONTRIBUTIONS OWED MAY BE ENTITLED TO A REASONABLE INFERENCE**

It is important to note at the outset again that the burden of proof is upon the Funds to "establish a prima facie case by establishing the inaccuracy of the employer's contributions."

See Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc., 1993 U.S. Dist. LEXIS 4741 (E.D.N.Y. Mar. 30, 1993). Merely producing an auditor's report is not sufficient to establish a prima facie case. See Id., at *5 ("There are inconsistencies and circular reasoning in this particular audit that cause its accuracy to be suspect, thereby discrediting the testimony of the auditor. As a result, plaintiffs have failed to establish a prima facie case."). Thus an employer, this Court, and even the Funds should not be permitted or required to blindly accept any assumption that the auditors wish to peddle. Id., at *9-10.

It cannot be overstated here that the audit conducted by the Steinberg Firm was so utterly and totally flawed that over $1.4M in contributions have already be removed due to the auditor's errors. Rather than simply conceding these flaws and the fact that a new audit should have been conducted from scratch, the Funds asserts that the audit findings had to be merely "tweaked" based on disputes raised by the Defendants. How over a $1.4M removal is a "tweak" is a question that is beyond Major's comprehension. In addition, the Funds incredibly tries to shift the auditor's blame to Major by asserting that Major did not provide all the information requested by the auditors and further states that it should not be punished for its "good deed" in removing the amounts included in error.

Noticeably absent in the Funds' opposition papers is any specificity as to exactly what information or documents that the Funds requested that Major failed to supply, which made it impossible for the Funds to properly determine if amounts were due. The Funds also fails to include any correspondence to Major where it identifies any areas of deficiency and asks that those omissions be cured. That is because no such letters exist. The only documents identified in the Opposition Brief that the Funds claims that Major "refused" to produce are "cash disbursement records, general ledgers and corporate tax returns," but none of these documents

would have helped the Funds determine if certain employees were covered by the applicable CBA's and whether contributions were owed by them.  Accordingly, the Funds should not be excused from making a proper audit on this basis.

In addition, the Funds attempt to categorize its removal of over $1.4 M as a "good deed" for which they are being "punished" is preposterous, to say the least.  Based on this argument, the Funds is basically saying that even though they knew that over $1.4M in their audit findings were incorrect, they should have refused to remove those findings because it would have been more difficult for Major to expose how truly screwed up the audit was performed.

The facts remain that the CBAs at issue only covered certain categories of employees at Major.  Under those CBAs, Major was required to make monthly contributions to the Funds only on behalf of employees covered by the CBAs.  However, the Funds' auditors merely requested the following information during their audit:   (a) employee's individual earnings records detailing wages, weeks worked and/or hours paid; (b) payroll tax records submitted to the federal and state government (federal form 941 and state form NYS-45 and/or WR-30); (c) Corporate Tax Return; (d) federal Forms 1096 and 1099; and (e) reports filed with any trust funds to which you [Major] pays fringe benefit contributions on any of your [Major's] employees.

Significantly, none of the aforementioned categories of documents provides the Funds or their auditors with sufficient any information that could confirm the job title or classification of any employee.  Category (a) above (employee's individual earnings records detailing wages, weeks worked and/or hours paid) covers every single Major employee regardless of whether they are covered by the CBAs or not and does not provide a detailed breakdown of each employee's job classification.   Categories (b) (payroll tax records submitted to the federal and state government (federal form 941 and state form NYS-45 and/or WR-30)), (c) (Corporate Tax

Return) and (d) (federal Forms 1096 and 1099) are no more helpful in determining relevant job classifications and job duties. Category (e) (reports filed with any trust funds to which you [Major] pays fringe benefit contributions on any of your [Major's] employees) only covers certain categories of employees that are clearly excluded from the findings and not to be included therein.

To the extent that the Funds argues that the payroll records above (category a above) listed each employee's job codes, those job codes only indicate what department each employee worked in and not whether their specific job within the department was covered by a CBA. For example, if employees were designated as "sales" or "parts" or "service" employees, these categories merely encompass the entire department and included employees specifically excluded from the CBAs such as managers, supervisors, clerical and other non-covered employees that provide support to a department in a non-union capacity. As such, the request was extremely overbroad and actually explains why the audits results were so overreaching. In fact, the Funds goes so far on this point that they concede that the audit was flawed and now they still argue that a trial is warranted on the remaining $465,000 they believe is due and owing from the same flawed audit.

Finally, the case most heavily relied upon by the Funds on this point is easily distinguishable and not controlling. In Demolition Workers Union, Local 95 v. Mackroyce Contr. Corp., 2000 U.S. Dist. LEXIS 3548 (S.D.N.Y. Mar. 17, 2000) the main issue that the Court was faced with is not even present here. The Mackroyce court examined a collective bargaining agreement that did not distinguish between union and non-union employees and at issue was whether the employer was justified in withholding benefit contributions by non-union

16

employees.  The Court ultimately held that where a CBA did not distinguish between union and non-union members, that both would be covered for the purpose of contributions owed.

This matter is easily distinguishable because the CBAs at issue clearly distinguished between employees covered by the agreements and not.  Major asserts in its Statement of Material Facts (and the Funds did not dispute) that the CBA between Major Chevrolet (Sales) and the Union covered only full-time commissioned salespersons and excluded "all clerical employees, professional employees, managerial employees, confidential employees, and all other employees guard and supervisors as defined by the Act."  The CBAs between Major Chevrolet (Service), Major Dodge (Service) and the Union covers only service technicians and parts counterpersons.

The above distinction shows, therefore, that the Funds (and/or their auditor's) failure to request information that could identify the employees covered and not covered by the CBAs goes to the very heart of how flawed this audit was performed.  Again, under A. Morrison Trucking, Inc., *supra*, merely producing an auditor's report is not sufficient to establish a prima facie case.  See Id., at *5.  Even the Mackroyce court noted that the "more basic defense in an ERISA Section 515 'requires contributions only in accordance with the terms and conditions of the collective bargaining agreement.'"  MacRoyce, 2000 U.S. Dist. LEXIS 3548, at * 8 (*citing* DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 653 (2d Cir. 1994)).

Thus, the audit was clearly fatally flawed as it would be impossible to ascertain with any reasonableness as to any contributions owed without more information, which was never requested.  Moreover, it would be fundamentally unfair to hold Major responsible for the Funds' own failure to conduct a proper audit or obtain the proper information in order for the findings to be given a reasonable inference.

Accordingly, because the Funds have failed on their burden of proof that the audit findings may be given some reasonable inference as a matter of law, there are no material disputed facts in need of resolution on these issues, and Major is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that their motion for summary judgment should be granted in its entirety and award the Defendants such other and further relief as this Court deems reasonable.

Dated:  September 2, 2011
         Lake Success, New York          MILMAN LABUDA LAW GROUP PLLC
                                          Attorneys for Defendants

                                  By_____
                                          Joseph M. Labuda, Esq.
                                          Adam C. Weiss, Esq.
                                          3000 Marcus Avenue Ste 3W8
                                          Lake Success, New York 11042
                                          (516) 328-8899